UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MELVIN E. DAVIS,                    )
                                    )
            Petitioner,             )
                                    )
v.                                  )        Nos:  3:05-cr-112
                                    )              3:09-cv-259
UNITED STATES OF AMERICA,           )              (VARLAN/SHIRLEY)
                                    )
            Respondent.             )


## MEMORANDUM

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Melvin E. Davis ("petitioner"). The government has filed its response to the motion and petitioner has filed his reply. In addition, petitioner filed a motion to supplement, which was granted, and the government filed its response. Petitioner also filed a motion to amend the § 2255 motion, to which the government has also responded. For the following reasons, the motion to amend will be **DENIED** as untimely, the § 2255 motion to vacate will be **DENIED**, and this action will be **DISMISSED**.

## I.      Standard of Review

This Court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process."

*United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II.    Factual Background

Petitioner was found guilty by a jury of both counts of a superseding indictment charging him with possession with intent to distribute cocaine base (count one) and possession with intent to distribute cocaine base within 1,000 feet of a public school (count two). He was sentenced as a career offender to concurrent terms of imprisonment of 240 months and 262 months, respectively, for a total effective term of imprisonment of 262 months. His convictions and sentence were affirmed on direct appeal. *United States v. Davis*, 514 F.3d 596 (6th Cir.), *cert. denied*, 555 U.S. 835 (2008).

In considering petitioner's motion to suppress, and his objections to the Report and Recommendation of the Magistrate Judge, this Court summarized the relevant evidence against petitioner adduced at the evidentiary hearing as follows:

> On March 9, 2005, Investigator Gilreath received information from a reliable confidential informant that defendant was "posted up"-an activity in which a crack dealer stands around waiting for crack users to approach him to

purchase crack cocaine-along Martin Luther King Avenue in Knoxville, Tennessee. Investigator Gilreath corroborated the informant's information when he went to the location and observed defendant. Investigator Gilreath contacted the Organized Crime Unit and requested a check on the status of defendant's license.

When he requested the driver's license information, Investigator Gilreath referred to defendant as "Tate," with 1980 as his year of birth. At that time, Investigator Gilreath knew defendant used several different aliases, including "Little Melvin," "Melvin Davis," and "Melvin Tate," but he believed defendant's real name was Melvin Tate. In response to his request for driver's license information, Investigator Gilreath was told that a person with the name Tate and with a February 7, 1980 birth date did not have a driver's license on file. Based on this information, Investigator Gilreath believed that defendant did not have a driver's license.

Around the time Investigator Gilreath received the driver's license information, he observed defendant get into the driver's seat of a blue Nissan Maxima. Investigator Gilreath observed defendant driving the car for several blocks. Investigator Gilreath observed defendant pull into a parking lot in front of a barbershop at the corner of Harrison and Wilson Avenues. Investigator Gilreath, who was operating an unmarked police vehicle, followed defendant into the parking lot.

As Investigator Gilreath pulled into the parking lot behind defendant, he observed defendant exit the vehicle and quickly move toward the barbershop. Investigator Gilreath exited his vehicle and followed defendant through the front door of the barbershop. As he moved toward defendant, Investigator Gilreath called to defendant and said he needed to talk to defendant. The two men stepped back outside the front door of the barbershop.

Investigator Gilreath asked defendant if he had a driver's license. Defendant stated that he did not. While talking with defendant, Investigator Gilreath noticed marijuana was clinging to the front thigh and abdomen area of defendant's jogging suit. Based on the observation of marijuana, Investigator Gilreath determined that defendant would be placed under arrest. The arrest was executed by Knoxville Police Department Lieutenant Mark Fortner, who was on the scene to assist Investigator Gilreath.

Following defendant's arrest, Lieutenant Fortner conducted a search of defendant and found crack cocaine in his sock. Defendant's vehicle was

impounded and defendant was transported to the Knoxville Police Department. While defendant was being transported, Investigator Gilreath gave defendant the Miranda warning. Once at the Knoxville Police Department, defendant was moved to the Organized Crime Unit, where he was given another Miranda warning before he was interviewed by an FBI special agent. Sometime during defendant's interview, Investigator Gilreath claims he learned for the first time that defendant's real name is Melvin Davis, not Melvin Tate.

Following the interview, defendant agreed to operate as a confidential informant for the Knoxville Police Department and the FBI. Between March 2005 and August 2005, Investigator Gilreath met with defendant several times. During his conversations with defendant, Investigator Gilreath discussed defendant's driver's license status. At some point defendant sought Investigator Gilreath's assistance in paying the fee to get his license reinstated because defendant could not afford it, but Investigator Gilreath declined.

On August 24, 2005, Investigator Gilreath received information from a reliable confidential informant that defendant was behind or around the corner from a building on Martin Luther King Avenue smoking marijuana. Investigator Gilreath and Knoxville Police Department Sergeant Brian Malone drove in an unmarked police vehicle toward the area when Investigator Gilreath's confidential informant called Investigator Gilreath again to say that defendant was at the location with two girls. Investigator Gilreath and Sergeant Malone arrived in the area where defendant was and observed him driving a black Jeep Cherokee. Investigator Gilreath and Sergeant Malone began to follow defendant south on Chestnut Avenue.

While following defendant, Investigator Gilreath observed defendant pass an object to one of the female passengers. Investigator Gilreath requested the assistance of a marked police vehicle and a female officer. Sometime after Investigator Gilreath requested assistance, defendant drove into the drop-off area of Austin East High School and stopped, as if to drop off the two female passengers at school. Investigator Gilreath and Sergeant Malone followed defendant into the drop-off area.

After defendant had stopped his vehicle in the drop-off area to let the two females out, Investigator Gilreath walked up to the passenger side of the vehicle while Sergeant Malone approached the driver's side and asked defendant for his driver's license. He replied that he did not have a driver's license. While talking with defendant and the two female passengers,

Investigator Gilreath observed marijuana on the console of the vehicle and smelled the odor of burned marijuana coming from inside the vehicle.

Investigator Gilreath asked the female passenger who had been in the front passenger seat whether she had been given anything by defendant. She responded that she had. Investigator Gilreath asked where it was. She responded by opening her purse. Investigator Gilreath observed a bag of crack cocaine inside the purse.

After observing the crack cocaine, Investigator Gilreath seized it and placed defendant under arrest. Defendant was transported back to the Knoxville Police Department and given the Miranda warning. During a subsequent interview, defendant admitted that he had been dealing drugs.

*United States v. Davis*, 2006 WL 533775 at **1-3 (E.D. Tenn. March 3, 2006) (Memorandum and Order adopting Report and Recommendation and denying motion to suppress). The Sixth's Circuit summary of the evidence against petitioner at trial was essentially the same. *United States v. Davis*, 514 F.3d at 600-603.

In support of his § 2255 motion, petitioner alleges numerous instances of ineffective assistance of counsel. He also alleges the following: the violation of the Double Jeopardy Clause constituted plain error; the denial of his motion to suppress constituted plain error; the district court abused its discretion in refusing to instruct the jury on a lesser-included offense; petitioner's statement should not have been admitted at trial and during sentencing; and the district court erred in increasing petitioner's sentence based upon judge-found facts.

## III.    Discussion

### A.    Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Petitioner alleges eight instances of ineffective assistance of counsel. The Court will consider each claim in turn.

### 1. Failure to object to hearsay testimony.

Petitioner claims his attorney failed to object to Officer Gilreath's testimony regarding the anonymous "tip" that led to the encounter between the officer and petitioner. He contends that had counsel objected, the testimony would have been stricken and evidence of the drug suppressed. Petitioner also claims that the testimony regarding the tip violated his right under the Confrontation Clause.

It is well settled that hearsay evidence is admissible in a suppression hearing.[1] *See, e.g., United States v. Stepp*, 680 F.3d 651, 668 (6th Cir. 2012) (citations omitted). Accordingly, petitioner's attorney was not ineffective for failing to object to Officer Gilreath's testimony at the suppression hearing. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (the failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel).

With respect to the claim that counsel should have objected to the testimony at trial, Officer Gilreath very briefly mentioned the information he had received from an informant, simply to provide context and explain his actions. [Criminal Action No. 3:05-cr-112, Doc. 99, Transcript of Day One of Jury Trial, p. 15]. The testimony was admissible, did not

---

[1]The Court notes that, in a supplemental filing, petitioner concedes this point and withdraws this claim. [Criminal Action No. 3:05-cr-112, Doc. 147, Clarification and Supplemental Memorandum of Law, p. 5].

violate the Confrontation Clause, and counsel was not ineffective in failing to object. *United States v. Moore*, 240 F. App'x 699, 710 (6th Cir. 2007) ("federal hearsay rules and the Confrontation Clause protect only statements 'offered in evidence to prove the truth of the matter asserted'") (quoting Fed. R. Evid. 801).

### 2.    Failure to hire a chemist.

Petitioner alleges his attorney failed to hire a chemist as an expert witness to rebut the testimony of the government's witness that the substance he was charged with possessing was cocaine base. Nevertheless, petitioner concedes that "[h]ad counsel for the petitioner hired a chemist, the defense testimony would have ... confirmed the government's forensic analysis." [Criminal Action No. 3:05-cr-112, Doc. 122, Motion to Vacate Sentence, p. 6]. Accordingly, petitioner has failed to demonstrate any prejudice based upon counsel's failure to hire an independent expert witness.

### 3.    Failure to show prejudice by government's non-compliance with Rule 16.

Petitioner alleges that counsel failed to demonstrate to the Court how the government's non-compliance with Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure adversely affected the verdict. The issue concerning the non-compliance was summarized by the Sixth Circuit on direct appeal:

> The district court held that the government's "Notice of Expert Testimony Pursuant to Rule 16 of the Federal Rules of Criminal Procedure," filed on March 28, 2006, met the requirements of Federal Rule of Criminal Procedure 16(a)(1)(G). Davis argues that the government failed to comply with Rule 16(a)(1)(G) because it did not provide the bases for the chemists' results, something clearly required after the 1993 Amendments to the Federal Rules

of Criminal Procedure. Also, Davis argues that the government was obligated to comply with the pre-trial discovery order.

...

We conclude that the district court incorrectly applied Rule 16(a)(1)(G) in this case because the government's submissions did not adequately describe the "bases and reasons" for the chemists' opinions. *See* Fed.R.Crim.P. 16(a)(1)(G). The government provided defense counsel with four documents. First, the government provided defense counsel with a copy of the Tennessee Bureau of Investigation Knoxville Crime Laboratory Official Forensic Chemistry Report, dated August 19, 2005. Second, the government attached a letter to the report indicating that if the case went to trial "[a] chemist [would] testify consistent with the laboratory report." J.A. at 100 (10/11/05 Ltr. to Paula Voss at 2). In addition, the letter stated that "[t]he chemist's testimony will be based on training, including formal education, and experience, including having conducted numerous such examinations." *Id*. Third, upon the addition of another count to the indictment against the defendant, the government sent a letter to defense counsel on October 26, 2005 that included a copy of a second laboratory report related to the second count.

Finally, on March 28, 2006, the government filed a "Notice of Expert Testimony Pursuant to Rule 16 of the Federal Rules of Criminal Procedure," which described, in broad terms, the educational background of the chemists, their experience, and the basis of their findings. J.A. at 94–95. This document devoted one sentence to the bases for the opinions of the chemists: "The findings of each chemist are based upon his/her education, training, experience and scientific tests he/she performed on the substances submitted." J.A. at 95. Chemist Silvers testified at the trial that the government did not ask her for her notes (serving as the basis for her conclusions) until the day that she testified (after a request from the district judge). J.A. at 374, 473 (Trial Tr. at 239:9–16, 338:9–24).

We conclude that none of these documents adequately indicate the bases for the chemists' laboratory reports; if Davis had hired a chemist, he or she would not have been able to analyze the steps that led to the government's chemists to their conclusions. The prosecutors clearly violated Rule 16(a)(1)(G). It was proper for the district court to request that the chemists provide their notes to Davis's counsel. J.A. at 374–75, 377 ( *id*. at 239:4, 240:6–9, 242:3–11). However, Davis's counsel demonstrated his belief that the verdict would not have been different if the government had complied with the

discovery rules by declining the district court's offer of a recess to review the newly provided chemists' notes and/or to obtain a chemist to testify on Davis's behalf. J.A. at 377 ( *id.* at 242:6–13). Also, Davis did not, upon the invitation of the district court, suggest any alternatives to total suppression of the evidence. J.A. at 375–77 ( *id.* at 240:23–241:1, 242:6–13). Finally, we note that, prior to trial, defense counsel should have been attuned to the implications of Federal Rule of Criminal Procedure 12(b).

*United States v. Davis*, 514 F.3d at 612 -613.

Petitioner contends that counsel's inability to demonstrate prejudice as a result of the government's violation of Rule 16 was ineffective assistance. Counsel could not, however, demonstrate prejudice because petitioner was not prejudiced by the violation. Counsel received the chemists' notes before they testified. In addition, petitioner has failed to state what information, if any, would have been discovered to undermine the chemists' testimony had counsel received the notes earlier.

### 4. Failure to object to inadmissible evidence at sentencing.

At sentencing, the Court found it worth noting that petitioner "admitted selling crack cocaine since his previous arrest forming the basis of the Count One charge." [Criminal Action No. 3:05-cr-112, Doc. 114, Transcript of Sentencing Hearing]. Petitioner claims that in making this finding, the Court impermissibly relied on a statement petitioner made in a polygraph examination that was ruled inadmissible. Petitioner's argument overlooks the fact that Special Agent Buddy Early testified that petitioner admitted to him to selling crack cocaine on two occasions after his arrest on count one because he needed the money. [*Id.*,

Doc. 100, Transcript of Day Two of Jury Trial, pp. 365-67]. Counsel was not ineffective in failing to object to the Court's finding.[2]

### 5. Failure to seek a lesser included offense on count one.

Petitioner alleges his attorney failed to pursue his request for a jury instruction on simple possession of a controlled substance. The defense theory, however, as evidenced by counsel's opening and closing arguments, was that the police officers fabricated evidence of petitioner's crack cocaine distribution. [*Id.*, Doc. 106, Transcript of Opening and Closing Statements, pp. 11-14, and 29-44, respectively]. There was no evidence that petitioner himself used crack cocaine. Thus, as a matter of trial strategy, a request for an instruction on simple possession would have negated the theory that petitioner was innocent. This Court will not second-guess counsel's trial strategy. *See, e.g., Bentley v. Motley*, 248 F. App'x 713, 718 (6th Cir. 2007) (the court's "review of counsel's strategy and trial tactics should be 'highly deferential' and should avoid second-guessing") (quoting *Strickland*, 466 U.S. at 689).

### 6. Failure to investigate mitigating evidence for sentencing.

Petitioner alleges that counsel failed to investigate and discover his history of mental health disorders, specifically mental retardation and ADHD, for consideration as sentencing factors. The presentence report made a passing mention that petitioner "related that he was treated only briefly" at Helen Ross McNabb Center and Peninsula Lighthouse as a teenager.

---

[2]The Court notes that, in a supplemental filing, petitioner concedes this point and withdraws this claim. [Criminal Action No. 3:05-cr-112, Doc. 147, Clarification and Supplemental Memorandum of Law, p. 10].

[Presentence Investigation Report, p. 13, ¶ 59]. Other than that, there was nothing in the record to suggest that petitioner had any mental problems that could have been discovered upon investigation. In addition, petitioner does not claim to have told his attorney there was anything about his mental health that could affect his sentencing. There being no proof that counsel should have known about an alleged mental disorder, he was not ineffective in failing to investigate the issue.

### 7. Failure to impeach a government witness.

Petitioner alleges that counsel failed to impeach the credibility of Geisha Bolden. Ms. Bolden was one of the girls in the vehicle with petitioner at the time of his arrest at Austin East High School and who testified that he passed something to her cousin while they were in the car. [Criminal Action No. 3:05-cr-112, Doc. 100, Transcript of Day Two of Jury Trial, pp. 255-56]. Contrary to petitioner's claim, however, counsel did impeach Ms. Bolden by emphasizing the inconsistencies in her testimony at trial as well as before the grand jury. [*Id.* at 259-68]. Counsel was not ineffective in this regard.[3]

### 8. Failure to move for judgment of acquittal.

Petitioner alleges that his attorney should have moved for a judgment of acquittal at the close of the government's case. He contends that the government failed to prove distribution of a controlled substance, and at best mere possession. Contrary to this

---

[3]The Court notes that, in a supplemental filing, petitioner concedes this point and withdraws this claim. [Criminal Action No. 3:05-cr-112, Doc. 147, Clarification and Supplemental Memorandum of Law, p. 14].

allegation, counsel in fact moved for a judgment of acquittal at the close of the government's case on the ground that the government had not met the burden of proof; he renewed the motion at the close of all evidence. [*Id*., Doc. 101, Transcript of Day Three of Jury Trial, pp. 428-40 and 449, respectively]. Counsel was not ineffective in this regard.

Based upon the foregoing, petitioner has failed to demonstrate that he received ineffective assistance of counsel under the standard set forth in *Strickland*.

### B.    Double Jeopardy Clause

Petitioner alleges that his conviction on count two of the superseding indictment violated his Fifth Amendment right against double jeopardy. Count two charged the following:

> The Grand Jury further charges that on or about August 24, 2005, in the Eastern District of Tennessee, Defendant MELVIN EUGENE DAVIS, did knowingly, intentionally, and without authority possess with intent to distribute cocaine base, also known as "crack," a schedule II controlled substance on and within 1, 000 feed of the real property comprising Austin East High School, a public secondary school.

[21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) and 860]

[*Id*., Doc. 15, Superseding Indictment, p. 1].

Petitioner incorrectly contends that he was charged with both possession with intent to distribute crack, in violation of § 841(a)(1), and possession with intent to distribute crack within 1,000 feet of a school, in violation of § 860, as a result of the same conduct. He was

in fact charged and convicted of a single act that violated both statutes. Petitioner is not entitled to relief on this claim.[4]

### C.     Motion to Suppress

Petitioner alleges that the denial of his motion to suppress constituted plain error. The denial of the motion to suppress was raised and rejected on direct appeal. Petitioner cannot use a § 2255 proceeding to relitigate issues decided adversely to him on direct appeal absent extraordinary circumstances, which are not present here. *See, e.g., Jones v. United* States, 178 F.3d 790, 796 (6th Cir. 1999) ("It is ... well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law.") (citations omitted). Petitioner is not entitled to relief on this claim.

### D.     Jury Instruction

Petitioner alleges that the district court abused its discretion in refusing to charge the jury on the lesser included offense of possession of a controlled substance as to count one. As noted previously, trial counsel did not pursue the request for an instruction on lesser-included offense, presumably as a matter of trial strategy. According, the Court did not abuse its discretion in not charging the jury as to lesser-included offense and petitioner is not entitled to relief on this claim.

---

[4]The Court notes that, in a supplemental filing, petitioner concedes this point and withdraws this claim. [Criminal Action No. 3:05-cr-112, Doc. 147, Clarification and Supplemental Memorandum of Law, p. 16].

**E.  Admissibility of Statement**

Petitioner alleges that the district court erred by allowing into evidence petitioner's statement to Special Agent Buddy Early in which he admitted selling crack cocaine on two occasions after his arrest on count one because he needed the money.  Petitioner relies on the fact that a criminal conviction cannot rest entirely on an uncorroborated extrajudicial confession.  *See, e.g., Smith v. United States*, 348 U.S. 147, 152-53 (1954).  Nevertheless, there was independent corroboration of part of petitioner's confession.

At the same time petitioner admitted to Officer Early that he had sold crack after his arrest, he also admitted to the officer that he had been smoking marijuana with the girls in his vehicle at Austin East High School.  [Criminal Action No. 3:05-cr-112, Doc. 100, Transcript of Day Two of Jury Trial, pp. 365-66].  That admission was corroborated by the odor of marijuana coming from petitioner's car at the time of his arrest.  [*Id*., Doc. 99, Transcript of Day One of Jury Trial, p. 55].

> It is generally recognized that corroboration in federal court does not entail independent proof of each element of the offense charged. The purpose of corroboration is to ensure the reliability of the confession or admission of the accused. Thus, the requirement is only that there be extrinsic evidence corroborating the admission as a whole which, taken together with the admission, is sufficient to support a finding of guilt beyond a reasonable doubt. If there is extrinsic evidence tending to corroborate the confession, the confession as a whole is admissible, and some elements of the offense may be proven entirely on the basis of a corroborated confession.

*United States v. Trombley*, 733 F.2d 35, 37 -38 (6th Cir. 1984) (internal citations omitted).

Based upon the foregoing, petitioner's statement was admissible and the Court did not abuse its discretion in admitting the statement. Petitioner is not entitled to relief on this claim.

### F.      Enhanced Sentence

Petitioner alleges that the district court erred by increasing his sentence based upon judge-found facts. He relies on *United States v. Booker*, 543 U.S. 220 (2005), in which the Supreme Court reaffirmed its holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id*. at 244.

Petitioner apparently refers to his statement to Agent Early as well as his statements during the polygraph examination. Petitioner is not entitled to relief pursuant to *Booker*, however, because he did not receive a sentence in excess of the statutory maximum term of imprisonment authorized for his offenses.

### G.      Supplement

In a supplement to the § 2255 motion, petitioner alleges that he should not be considered a career offender because two of his prior sentences were related and should be counted as a single sentence. He relies on Amendment 709 (effective November 1, 2007), which amended U.S.S.G. § 4A1.2 for purposes of determining whether prior sentences should be counted separately or as a single sentence. Petitioner was sentenced on August 31, 2006. The Sixth Circuit has held that Amendment 709 does not apply retroactively. *United*

*States v. Horn*, 679 F.3d 397 (6th Cir. 2012). Amendment 709 thus affords petitioner no relief.

### H.    Motion to Amend

Petitioner also filed a motion to amend the § 2255 motion to state a claim that the government knowingly relied on manufactured evidence and perjured testimony, and that petitioner's attorney colluded with the government's attorney in committing this fraud upon the Court. For the following reasons, the motion to amend is time-barred and will be denied.

A federal prisoner has one year in which to file a § 2255 motion. The limitation period generally runs from the date on which the judgment of conviction becomes final. Petitioner's conviction became final on October 6, 2008, which was the date the Supreme Court denied his petition for writ of certiorari. [Doc. 119]. Petitioner timely filed his original § 2255 motion on June 11, 2009. [Doc. 122]. Petitioner's motion to amend the § 2255 was filed on June 14, 2011. [Doc. 136]. The question, then, is whether the motion to amend is timely because it "relates back" to the original filing date.

"An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 640 (2005). *See also Oleson v. United States*, 27 F. App'x 566, 571, 2001 WL 1631828 *3 (6th Cir. December 14, 2001) ("Oleson's amendment does not escape the AEDPA statute of limitations by 'relating back' to previous claims -- Oleson's amendment raises an entirely new argument").

Petitioner's motion to amend raises new claims of prosecutorial misconduct and ineffective assistance of counsel which are unrelated to his original claims of ineffective assistance. His new allegations do not relate back to the original pleading, are time-barred, and will not be considered by the Court.

## IV.    Conclusion

Petitioner's motion to amend will be **DENIED**. Petitioner is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. All other pending motions will be **DENIED** as **MOOT**. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE